# Richmond

GEORGE SLATER v. COMMONWEALTH OF VIRGINIA.

May 1, 1944.

Record No. 2807.

Present, All the Justices.

The opinion states the case.

*S. B. Campbell*, for the plaintiff in error.

*Abram P. Staples, Attorney General*, and *Edwin B. Jones, Assistant Attorney General*, for the Commonwealth.

CAMPBELL, C. J., delivered the opinion of the court.

The accused was indicted for the larceny of an automobile, the property of one Louis Hyatt. Upon his trial by a jury, he was found guilty of grand larceny and his punishment fixed at three years' confinement in the penitentiary. Judgment was entered in accordance with the finding of the jury.

This writ of error is to that judgment.

The dominant assignment of error is the refusal of the trial court to quash the writ of *venire facias*.

The facts touching this assignment of error are as follows: After the jury had been sworn upon their *voir dire*, and before the jury had been sworn to try the case, the defendant, by counsel, moved the court to quash the writ of *venire facias* because it was not attested by the clerk, as required by section 106 of the Constitution of Virginia. Thereupon, in chambers, the court, in the absence of the accused, examined the clerk on oath and had him to compare the unsigned *venire facias* with the list of jurors drawn from the jury box. The clerk testified that the same names were on the unsigned *venire facias*, whereupon the court permitted the clerk to sign the writ of *venire facias* and proceed with the trial of the case.

Section 106 of the Constitution reads as follows:

"Writs shall run in the name of the 'Commonwealth of Virginia,' and be attested by the clerks of the several courts. Indictments shall conclude 'against the peace and dignity of the Commonwealth.'"

■ It is beyond question that the imposition of the duty upon the clerk to attest the writ is mandatory. This is made manifest by section 198 of the Constitution, which reads,

*inter alia*: "In conferring a power or imposing a duty 'may' is permissive and 'shall' is mandatory."

While this court has not heretofore been called upon to pass upon the identical question herein involved, it has construed the last sentence of section 106 relative to indictments.

In *Guynn* v. *Commonwealth*, 163 Va. 1042, 177 S. E. 227, Judge Chinn, speaking for the court, said:

"It is well settled in this State that each and every count in an indictment must conclude with the words 'against the peace and dignity of the Commonwealth,' as required by section 106 of the Constitution, and the omission of such conclusion renders such indictment, or count therein, as the case may be, fatally defective," citing *Commonwealth* v. *Carney*, 4 Gratt. (45 Va.) 546; *Thompson* v. *Commonwealth*, 20 Gratt. (61 Va.) 724; *Early* v. *Commonwealth*, 86 Va. 921, 11 S. E. 795. See also, *Brown* v. *Commonwealth*, 86 Va. 466, 10 S. E. 745.

By the same token it follows as a corollary that when the mandatory provision of the Constitution provides that writs shall run in the name of the Commonwealth and by unequivocal implication *shall* be attested by the clerk, a writ not so attested by the clerk, when issued, is fatally defective.

If a writ be dead, it is impossible to breathe into it the breath of life. However, it is the contention of the Attorney General that the writ is merely dormant and that under the provisions of section 4895 of Michie's Code, the court had the power to revivify the writ by permitting the clerk to attest it in the absence of the accused. Section 4895 is an amendment of section 4018 of the Code of 1887.

In *Looney* v. *Commonwealth*, 115 Va. 921, 926, 78 S. E. 625, it appears that counsel for accused moved the court to quash the *venire facias* on the ground that it contained more than twenty names, as provided by the statute. In that case the contention was made that the curative provision of the statute was effective. The trial court so held and permitted the writ to be reformed.

In holding that the court committed reversible error, Judge Whittle said:

"The concluding paragraph of the section declares that no irregularities or errors in drawing the names, or in making out or copying or signing or failing to sign the list, or in summoning the persons named in the list, shall be cause for granting a new trial, unless objection thereto was made before the jury was sworn, and unless it appears that the irregularity, error or failure was intentional, or was such as to probably cause injustice to the Commonwealth or to the accused.

"The record shows a plain departure from imperative provisions of the statute in several essential particulars. No good cause, or indeed any cause, was shown for directing more than twenty names to be drawn and placed in the list to be summoned. Nevertheless, the second list of veniremen contained the names of sixty persons, and the order of the court and *venire facias* directed the officer to summon only thirty from the list. Moreover, the mandatory provision of the law, that when more than twenty persons are ordered to be drawn and summoned, the number shall in no case be more than four in excess of the number to be summoned, was wholly disregarded.

■ "The manifest object of the foregoing provision of the statute is to secure a drawn list of veniremen and to render it impossible to pack the jury."

In *Jones* v. *Commonwealth*, 100 Va. 842, 846, 41 S. E. 951, 952, it was held that omission of any statutory essential, apparent on the record, is error.

In *Hoback* v. *Commonwealth*, 104 Va. 871, 877, 52 S. E. 575, Judge Harrison quotes with approval the following language from the *Jones'* *Case*, *supra*:

" 'These provisions of the statute in respect to impaneling juries are not directory merely, but imperative. They are rules which are made essential in the proceedings involving life or liberty, and it is the right of the accused to demand that they be complied with. To disregard them is to deprive the accused of that due process of law which is provided by the Legislature, and which is required by the fundamental law of the land.' Further, on p. 847, it is said:

'This the statute requires, and if one of the formalities which it prescribes may be disregarded, all may be set at naught.'"

In *Patrick* v. *Commonwealth*, 115 Va. 933, 939, 78 S. E. 628, Judge Buchanan, construing section 4018 of the Code, had this to say:

"As there are now in our hands six felony cases, either upon the docket or upon petition for writs of error, in which the principal errors assigned are based upon alleged violations or disregard of our statutory provisions in reference to the selection of jurors, it may not be improper for this court to impress upon the trial judge the great importance, if not absolute necessity, of seeing that these statutes are strictly complied with. Our statutory provisions on the subject are plain and not difficult to enforce. They were enacted, not only for the purpose of securing fit jurors, but to avoid even the suspicion of partiality or corruption in their selection. The fact that it may sometimes be inconvenient to the court or cause delay in the trial of a cause is no sufficient reason why the statutes should not be strictly and rigidly enforced. The legislative intent in these matters should absolutely control the action of the judiciary. The courts have no other duty to perform than to execute the legislative will without any regard to their own views as to the necessity or wisdom of the enactments. Sedgewick on Stat. Constr. 325."

If such be the rule of construction in regard to a legislative enactment, then, much more convincing is the mandatory language of the Constitution, that the writs, when issued, shall be attested by the clerks of the courts.

In the brief of the Attorney General it is argued that the guilt of the accused is fully proven and "no objection is made on the grounds of lack of evidence."

The language employed by Judge Harrison in *Hoback's Case, supra,* is most apposite:

"The argument at bar has been elaborate to show the guilt of the prisoner, but if that fact was established with ever so much certainty, it would furnish no ground for removing any bar which the law has erected to protect the accused. The right of the guilty man is exactly the same when on

trial as that of an innocent person, and his right to go unpunished until he is formally convicted, after making every defense to which the innocent are entitled, is one of the main pillars whereon rests our liberty and security in the pursuit of happiness. The guilty man is entitled to be convicted according to law, or in default thereof to be acquitted. Hence it is, says Mr. Bishop, 'that before any person can be made to suffer for a crime, he must be caught and held in the exact meshes which the law has provided, or, in other words, he must be proceeded against, step by step, according to the rules ordained by the law. It is of no avail to pursue him in a way indicated by better rules; the law's rules must be applied, or the law's penalty cannot be imposed.' Bishop's Crim. Pro., sec. 89; *State* v. *McCormick*, 84 Me. 566, 24 Atl. 938; *Hatch* v. *State*, 8 Tex. Ct. App. 416, 34 Am. Rep. 751.

"This learned author further says: 'A Court inquiring after the regularity of its proceedings, never asks whether or not the defendant is guilty.' Section 92. And in section 93 he says: 'The function of human law is merely to conserve the outward order of society. And a part of this order, not less essential than any other, consists in adhering to the exact methods which the law has laid down for bringing criminals to justice.' "

It is better that a guilty person be afforded a fair trial under the *aegis* of the Constitution than that the court should sustain an illegal verdict.

There are other assignments of error relating to the giving and refusing of instructions.

The instructions given and refused by the trial court conform to the decision of this court in *Slater* v. *Commonwealth*, 179 Va. 264, 18 S. E. (2d) 909, and therefore, the assignments of error are without merit.

For these reasons, the verdict of the jury must be set aside and the case remanded for a new trial.

*Reversed.*

HUDGINS and GREGORY, JJ., dissenting.